IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TIG INSURANCE COMPANY,⁣ )<br>⁣ )<br>Plaintiff,⁣ )<br>⁣ )<br>vs.⁣ )<br>⁣ )<br>HASEKO HOMES, INC.; and⁣ )<br>HASEKO CONSTRUCTION, INC.,⁣ )<br>⁣ )<br>Defendants.⁣ )<br>⁣ )<br>MARSH USA INC.,⁣ )<br>⁣ )<br>Defendant by⁣ )<br>Intervention.⁣ )<br>_____⁣ )<br>⁣ )<br>NORTH AMERICAN SPECIALTY⁣ )<br>INSURANCE COMPANY,⁣ )<br>⁣ )<br>Plaintiff,⁣ )<br>⁣ )<br>vs.⁣ )<br>⁣ )<br>FOUNDATIONS HAWAII, INC.;⁣ )<br>HASEKO HOMES, INC.; HASEKO⁣ )<br>CONSTRUCTION, INC.,⁣ )<br>⁣ )<br>Defendants.⁣ )<br>⁣ )<br>MARSH USA INC.,⁣ )<br>⁣ )<br>Defendant by⁣ )<br>Intervention.⁣ )<br>_____⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ )<br>⁣ ) | CV. NO. 10-00107 DAE-KSC<br>CV. NO. 10-00146 DAE-KSC<br>CV. NO. 10-00575 DAE-KSC |

CLARENDON AMERICA                 )
INSURANCE COMPANY,                )
                                  )
              Plaintiff-Intervenor, )
                                  )
      vs.                         )
                                  )
HASEKO HOMES, INC.; HASEKO        )
CONSTRUCTION, INC.;               )
FOUNDATIONS HAWAII, INC.;         )
and COASTAL CONSTRUCTION          )
COMPANY, INC.                     )
                                  )
              Defendants by       )
              Intervention.       )
                                  )
MARSH USA INC.,                   )
                                  )
              Defendant by        )
              Intervention        )
_____    )
                                  )
TIG INSURANCE COMPANY,            )
                                  )
              Plaintiff,          )
                                  )
      vs.                         )
                                  )
FOUNDATIONS HAWAII, INC.,         )
                                  )
              Defendant.          )
_____    )

ORDER: (1) GRANTING MOTION TO STRIKE; (2) GRANTING IN PART
AND DENYING IN PART MOTIONS TO DISMISS; (3) GRANTING
<u>MOTIONS FOR JOINDER</u>

On January 5, 2011, the Court heard Defendants Haseko Homes, Inc.

and Haseko Construction, Inc.'s Motion to Strike Clarendon America Insurance

Company's Memorandum in Opposition to Defendants' Motion to Dismiss, or in

the Alternative, Stay Action in Favor of Pending State Action ("Motion to Strike")

(Doc. # 84).  The Court also heard Defendants Haseko Homes, Inc. and Haseko

Construction, Inc.'s Motion to Dismiss, or in the Alternative, Stay Action in Favor

of Pending State Action as to Plaintiff TIG Insurance Company ("Motion to

Dismiss TIG I") (Doc. # 32); Defendants Haseko Homes, Inc. and Haseko

Construction, Inc.'s Motion to Dismiss, or in the Alternative, Stay Action in Favor

of Pending State Action as to Plaintiff North American Specialty Insurance

Company ("Motion to Dismiss NAS") (Doc. # 85); Defendants Haseko Homes,

Inc. and Haseko Construction, Inc.'s Motion to Dismiss, or in the Alternative, Stay

Clarendon America Insurance Company's Complaint-in-Intervention in Favor of

Pending State Action ("Motion to Dismiss Clarendon") (Doc. # 80); and Defendant

Foundations Hawaii, Inc.'s Motion to Dismiss Plaintiff TIG Insurance Company's

Complaint, or in the Alternative, to Stay the Instant Action in Favor of Pending

State Action ("Motion to Dismiss TIG II") (Doc. # 106) (collectively, "Motions to

3

Dismiss"). Finally, the Court heard Foundations Hawaii, Inc.'s Motion for Substantive Joinder in the Motion to Dismiss NAS (Doc. # 83); Foundations Hawaii, Inc.'s Motion for Substantive Joinder in the Motion to Dismiss Clarendon (Doc. # 90); Marsh U.S.A. Inc.'s Motion for Consolidated Substantive Joinder in the Motion to Dismiss TIG I, Motion to Dismiss NAS, and Motion to Dismiss Clarendon (Doc. # 99); and Coastal Construction Company Inc.'s Motion for Joinder in the Motion to Dismiss Clarendon (Doc. # 103) (collectively, "Motions for Joinder").

Andrew R. McCloskey, Esq., and Roy F. Hughes, Esq., appeared at the hearing on behalf of Plaintiff TIG Insurance Company; Ralph J. O'Neill, Esq., appeared at the hearing on behalf of Plaintiff North American Specialty Insurance Company; J. Patrick Gallagher, Esq., appeared at the hearing on behalf of Plaintiff-Intervenor Clarendon America Insurance Company; Philip L. Pillsbury, Esq., Steven K.S. Chung, Esq., and Chanelle Mari Chung Fujimoto, Esq., appeared at the hearing on behalf of Defendants Haseko Homes, Inc. and Haseko Construction, Inc.; Brad S. Petrus, Esq., appeared at the hearing on behalf of Defendant Foundations Hawaii, Inc.; Scott E. Kubota, Esq., appeared at the hearing on behalf of Intervenor-Defendant Coastal Construction Company, Inc.; Nenad Krek, Esq., and Duane R. Miyashiro, Esq., appeared at the hearing on behalf of

Intervenor-Defendant Marsh U.S.A., Inc.  After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS the Motion to Strike, GRANTS IN PART AND DENIES IN PART the Motions to Dismiss, and GRANTS the Motions for Joinder.  The Court hereby orders a stay of proceedings pending resolution of NAS and Clarendon's motions to dismiss or sever in the <u>Coastal</u> Action.

<u>BACKGROUND</u>

As the parties are aware, this is a consolidated action for declaratory relief, which involves potential insurance liability for allegedly defective construction work.  This matter arises from Haseko Homes, Inc. and Haseko Construction, Inc.'s (collectively, "Haseko") development and construction of residential units in the Ocean Pointe Project ("Ocean Pointe") located in Ewa, Hawaii.  The Ocean Pointe development consists of several hundred single and multi-family homes.  Foundations Hawaii, Inc. ("Foundations") and Coastal Construction, Inc. ("Coastal") are two of Haseko's subcontractors for the Ocean Pointe development.  Marsh U.S.A., Inc. ("Marsh") is Haseko's insurance broker.

The owners of the Ocean Pointe residential units have filed in Hawaii state court four putative class action lawsuits, which assert claims for construction defects in the Ocean Pointe residential units.  This, in turn, has spawned various

additional lawsuits, which are currently pending in Hawaii state court. TIG

Insurance Company ("TIG"), North American Specialty Insurance Company

("NAS"), and Clarendon America Insurance Company ("Clarendon") are the three

insurance companies whose coverage is potentially implicated by the myriad

lawsuits currently pending in Hawaii state court.

TIG, NAS, and Clarendon have all filed complaints in this Court

seeking a declaration that they do not have a duty to defend or a duty to indemnify

the insureds under their respective policies. NAS and Clarendon also seek

reimbursement of funds already expended to defend their insureds in the various

Hawaii state court actions. Currently pending before the Court in this consolidated

action are four motions to dismiss, or in the alternative, stay in favor of pending

state action (collectively, "Motions to Dismiss") as well as joinders to those

motions and a motion to strike.

Due to the factual and procedural complexity of this consolidated

action, it is best to begin with a brief overview of the parties involved and the

claims asserted in each of the lawsuits currently pending in state and federal court.[1]

---

[1] All citations are to the lead case unless otherwise indicated.

I.     Hawaii State Court Lawsuits

            The Court is aware of seven lawsuits that have been filed in Hawaii

state court that pertain to the Ocean Pointe development and the alleged

construction defects occurring therein.  Those seven lawsuits can be divided into

three categories: (1) homeowner construction defect lawsuits; (2) insurance

subrogation lawsuits; and (3) a declaratory judgment lawsuit.

            A.     State Court Homeowner Construction Defect Lawsuits

            On June 26, 2009, Haseko and others were named as defendants in a

putative class action in Hawaii state court, captioned Kai, et al. v. Haseko Homes,

Inc., et al., Circuit Court for the First Circuit of Hawaii, Civil No. 09-1-1476-06

(the "Kai I Action").  This action involved strict liability, negligence, and other

claims against Haseko for Haseko's purported use of galvanized steel hurricane

strap tie hold-downs designed, manufactured, and sold by Simpson Strong-Tie

Company, Inc. ("Simpson Straps") in the construction of the Ocean Pointe

residential units.  Haseko filed a motion to dismiss the complaint in the Kai I

Action on July 20, 2009.  The Hawaii state court granted this motion to dismiss on

September 9, 2009, and the Kai I Action was dismissed without prejudice.

            On August 19, 2009, Haseko and others were named as defendants in

a putative class action in Hawaii state court, captioned Charles, et al. v. Haseko

Homes, Inc., et al., Circuit Court for the First Circuit of Hawaii, Civil No. 09-1-1932-08 (the "Charles Action"). As with the Kai I Action, the Charles Action involves strict liability, negligence, and other claims against Haseko for Haseko's purported use of Simpson Straps in the construction of the Ocean Pointe residential units. The Charles Action is ongoing.

On November 18, 2009, Haseko and others were named as defendants in a putative class action in Hawaii state court, captioned Alvarez, et al. v. Haseko Homes, Inc., et al., Circuit Court for the First Circuit of Hawaii, Civil No. 09-1-2697-11 (the "Alvarez Action"). The Alvarez Action, like the Charles and Kai I Actions, involves strict liability, negligence, and other claims against Haseko for Haseko's purported use of Simpson Straps in the construction of the Ocean Pointe residential units. On April 20, 2010, Defendants Simpson Manufacturing Co., Inc. and Simpson Strong-Tie Company, Inc. filed a third party complaint in the Alvarez Action against Foundations and Coastal. The plaintiffs in the Alvarez Action filed a Second Amended Complaint on July 28, 2010, which asserted direct claims against Foundations and Coastal. The Alvarez Action is ongoing.

On December 8, 2009, Haseko and others were named as defendants in a putative class action in Hawaii state court, captioned Kai, et al. v. Haseko Homes, Inc., et al., Civil No. 09-1-2834-12 (the "Kai II Action"). The Kai II

Action involves breach of contract, products liability, negligence, and breach of warranty claims against Haseko regarding the use of "PEX Pipe" and "Zurn fittings" in the potable water systems of the Ocean Pointe residential units. On May 6, 2010, Haseko filed a third party complaint in the <u>Kai II</u> Action against TIG, NAS, and Clarendon, seeking a declaratory judgment that TIG, NAS, and Clarendon have a duty to defend and a duty to indemnify Haseko in the <u>Charles</u>, <u>Alvarez</u>, and <u>Kai II</u> Actions. Haseko's third party complaint was dismissed on August 11, 2010. The remainder of the <u>Kai II</u> Action is ongoing.

B.     <u>State Court Insurer Subrogation Lawsuits</u>

On June 30, 2009, Haseko and others filed a lawsuit in Hawaii state court against Simpson Strong-Tie Company, Inc. ("Simpson"), Honolulu Wood Treating Company ("Honolulu Wood"), and others, captioned <u>Ke Noho Kai Development, LLC, et al. v. Simpson Strong-Tie Company, Inc., et al.</u>, Circuit Court for the First Circuit of Hawaii, Civil No. 09-1-1491-06 (the "<u>Steadfast</u> Action"). In the <u>Steadfast</u> Action, Haseko and others seek damages from Simpson and Honolulu Wood for the allegedly premature deterioration of the Simpson Straps and damage to concrete slab foundations of the Ocean Pointe residential units. On December 9, 2009, Simpson and Honolulu Wood filed a third party complaint in the <u>Steadfast</u> Action seeking contribution and indemnity from

Foundations and Coastal for alleged poor performance of their construction work for Haseko.  On June 6, 2010, Foundations filed a cross-claim against Coastal.  The Steadfast Action is ongoing.

On June 30, 2009, NAS filed a lawsuit in Hawaii state court against Simpson and KC Metal Products, Inc., captioned North American Specialty Insurance Company v. Simpson Strong-Tie Company, Inc., et al., Circuit Court for the First Circuit of Hawaii, Civil No. 09-1-1490-06 (the "Simpson Action").  The Simpson Action alleges that the Simpson Straps were defective and that Simpson should be liable to NAS for the amount that NAS is required to pay to defend its insureds, settle claims against its insureds, and indemnify its insureds in connection with any of the lawsuits regarding the Simpson Straps.  On April 19, 2010, Simpson filed a third party complaint against Haseko, Foundations, and Coastal among others.  The Simpson Action is ongoing.

C.     State Court Declaratory Judgment Lawsuit

On February 23, 2010, Coastal filed a lawsuit in Hawaii state court against NAS and Haseko, captioned Coastal Construction Company, Inc. v. North American Specialty Insurance Company, et al., Circuit Court for the First Circuit of Hawaii, Civil No. 10-1-0410-02 (the "Coastal Action").  Coastal filed a first amended complaint on February 25, 2010.  In the lawsuit, Coastal seeks a

declaratory judgment that NAS has a duty to defend and a duty to indemnify Coastal as to Simpson's third party complaint in the <u>Steadfast</u> Action. Coastal also asserts claims for breach of contract and failure to properly procure insurance against Haseko. The breach of contract claim provides that if it is determined that there is no NAS coverage as to Coastal for the claims asserted against it in Simpson's third party complaint in the <u>Steadfast</u> Action, then Haseko has breached its contractual obligation to provide Coastal with insurance. In that case, Coastal argues that Haseko should be ordered to defend and indemnify Coastal as to Simpson's third party complaint in the <u>Steadfast</u> Action. The failure to properly procure insurance claim provides that if it is determined that the Clarendon Policy does not provide coverage for all of the residential units implicated in Simpson's third party complaint in the <u>Steadfast</u> Action, Haseko should be liable to defend and indemnify Coastal for this claim as to the uninsured units.[2]

On March 2, 2010, Haseko filed a cross-claim against NAS as well as a third party complaint against Clarendon and Marsh in the <u>Coastal</u> Action. In the

---

[2] There is a dispute between the parties as to whether or not the Clarendon Policy covers Area 1C work in the Ocean Pointe development. Clarendon asserts that its policy covers only Area 1D work. (Clarendon Compl. ¶ 32.) Haseko contends that the intent of the parties was to include both Areas 1C and 1D under the Clarendon Policy and that the endorsement limiting coverage to Area 1D was the result of a mutual mistake.

cross-claim against NAS, Haseko asserts that NAS is liable for all liability that Haseko may have to Coastal in the Coastal Action. In the third party complaint against Clarendon and Marsh, Haseko seeks reformation against Clarendon to the extent that it does not cover Area 1C work in the Ocean Pointe development. Haseko also seeks a judicial declaration of the scope of the coverage in the Clarendon Policy as well as damages against Marsh for purported negligent failure to procure insurance coverage for Area 1C.

On April 8, 2010, NAS removed the Coastal Action to this Court on the basis of diversity jurisdiction. (Cv. No. 10-00206, Doc. # 1.) NAS asserted that Haseko had been fraudulently joined and therefore there was complete diversity. (See id.) On July 14, 2010, U.S. Magistrate Judge Barry M. Kurren recommended that the Coastal Action be remanded to Hawaii state court. (Cv. No. 10-00206, Doc. # 39.) This Court issued an Order on August 4, 2010, which adopted Judge Kurren's recommendation to remand the Coastal Action to Hawaii state court. (Cv. No. 10-00206, Doc. # 43.)

On August 24, 2010, after the Coastal Action had been remanded, Haseko filed a first amended cross-claim against NAS, which seeks a declaration that NAS has a duty to defend and a duty to indemnify Haseko as to the Charles, Alvarez, and Kai II Actions. On the same day, Haseko filed a first amended third

12

party complaint against Clarendon and Marsh, which seeks judicial determination of the scope of coverage of the Clarendon Policy as to the <u>Charles</u>, <u>Alvarez</u>, and <u>Kai II</u> Actions.  Haseko also seeks reformation of the Clarendon Policy to the extent that it does not cover all homes in the Ocean Pointe development constructed during the Clarendon policy period.  Additionally, Haseko seeks damages from Marsh for failure to procure adequate insurance as to the <u>Charles</u>, <u>Alvarez</u>, and <u>Kai II</u> Actions.

In the meantime, Marsh filed a motion to bifurcate the <u>Coastal</u> Action into a coverage phase and a procurement phase.  The Hawaii state court denied that motion on November 24, 2010.  The Hawaii state court has also denied Coastal's motion to add TIG as a defendant in the <u>Coastal</u> Action.  Clarendon and NAS have both filed motions to dismiss or sever the insurance coverage claims in the <u>Coastal</u> Action, which are scheduled for hearing on February 8, 2011.  Clarendon represents that if the insurance coverage claims in the <u>Coastal</u> Action are severed, they will be removed to this Court.[3]  (<u>See</u> Doc. # 120 at 5.)

---

[3] Haseko asserted at the hearing on this matter that even if the Hawaii state court severs the insurance coverage claims in the <u>Coastal</u> Action those claims may not be removable to this Court.  The Court expresses no opinion as to whether those claims will, in fact, be removable if they are severed.

II.     Federal Court Lawsuits

TIG, NAS, and Clarendon have collectively filed four complaints in this Court, which all seek judicial determination of the scope of coverage under the respective insurance policies as to the various state court actions summarized above.  These four complaints have all been consolidated into the instant action.

A.      Federal Court Lawsuit Filed by TIG Insurance Company Against Haseko ("TIG I Action")

On February 26, 2010, Plaintiff TIG filed a Complaint in this Court for declaratory relief against Defendant Haseko.  (Doc. # 1.)  On May 17, 2010, TIG filed a First Amended Complaint for declaratory relief ("TIG I First Amended Complaint").  ("TIG I FAC," Doc. # 22.)  Haseko Homes, Inc. is the named insured under a Coverage Plus Excess Liability Policy issued by TIG, Policy Number XLB9152516, for the period of November 5, 1997 to November 5, 2001 ("TIG Excess Policy").[4]  (Id. ¶ 12.)  The TIG Excess Policy "provides commercial general liability coverage to an insured for covered liability in excess of the applicable limits of underlying insurance."  (Id.)  TIG contends that its defense obligation can only be triggered by the exhaustion of the underlying policies set forth in the Schedule of Underlying Insurance in the TIG Excess Policy as well as

_____

[4] The TIG Excess Policy provides excess coverage for the same policy period as the NAS policy.

by exhaustion of any other insurance available to an insured.  (Id. ¶ 14.)  TIG also

asserts that it has no duty to indemnify until the limits set forth in the Schedule of

Underlying Insurance are exhausted through payment of claims covered by the

TIG Excess Policy.  (Id. ¶ 15.)  TIG seeks a declaratory judgment that it has no

duty to defend and no duty to indemnify Haseko in the Charles, Alvarez, and Kai II

Actions.  (Id. ¶¶ 17–26.)

On June 4, 2010, Haseko filed a Motion to Dismiss, or in the

Alternative, Stay Action in Favor of Pending State Action ("Motion to Dismiss

TIG I").  ("MTD TIG I," Doc. # 32.)  TIG filed an Opposition to the Motion to

Dismiss TIG I on July 26, 2010.  ("MTD TIG I Opp'n," Doc. # 36.)  Haseko filed a

Reply on August 2, 2010.  ("MTD TIG I Reply," Doc. # 38.)

On August 30, 2010, the Court heard argument on the Motion to

Dismiss TIG I.[5]  During the hearing, the Court ordered supplemental briefing

clarifying what parties and issues are involved in the Coastal Action.[6]  The Court

_____

[5] Andrew R. McCloskey, Esq., and Roy F. Hughes, Esq., appeared at the
hearing on behalf of TIG; Ralph J. O'Neill, Esq., appeared at the hearing on behalf
of NAS; J. Patrick Gallagher, Esq., appeared at the hearing on behalf of Clarendon;
Philip L. Pillsbury, Jr., Esq., and Chanelle Mari Chung Fujimoto, Esq., appeared at
the hearing on behalf of Haseko; Brad S. Petrus, Esq., appeared at the hearing on
behalf of Foundations.

[6] Haseko's Motion to Dismiss TIG I focuses solely on the third party
(continued...)

instructed the parties to file this briefing on or before October 4, 2010.  On October

4, 2010: Foundations filed a Supplemental Memorandum (Doc. # 73); Haseko filed

a Supplemental Memorandum (Doc. # 74); TIG filed a Supplemental

Memorandum ("TIG Supp. Mem.," Doc. # 76), which NAS joined (Doc. # 78); and

Clarendon filed a Supplemental Memorandum (Doc. # 77).

B.    Federal Court Lawsuit Filed by North American Specialty Insurance
      Company ("NAS Action")

On March 15, 2010, Plaintiff NAS filed a Complaint in this Court for

declaratory relief against Defendants Haseko and Foundations ("NAS Complaint").

("NAS Compl.," Cv. No. 10-00146, Doc. #1.)  Haseko Homes, Inc. is the named

insured under a Commercial General Liability Policy issued by Underwriters

---

[6](...continued)
complaint it filed against TIG, NAS, and Clarendon in the Kai II Action and
whether that third party complaint is a parallel state proceeding that could justify
dismissal or stay of the TIG I Action.  Haseko's third party complaint in the Kai II
Action was dismissed on August 11, 2010, nineteen days before the hearing on
Haseko's Motion to Dismiss TIG I.  However, on August 24, 2010, six days before
the hearing on Haseko's Motion to Dismiss TIG I, Haseko filed a first amended
cross-claim against NAS and a first amended third party complaint against
Clarendon and Marsh in the Coastal Action.  At the hearing, Haseko conceded that
its third party complaint in the Kai II Action had been dismissed.  Haseko
nonetheless argued to the Court that the Coastal Action was a parallel state
proceeding that could justify dismissal or stay of the TIG I Action.  The Court
ordered supplemental briefing on the Coastal Action because none of the briefing
previously submitted discussed the Coastal Action or its implication on the TIG I
Action.

Insurance Company, Policy Number RG00164, for the period of November 5, 1997 to November 5, 2001 ("NAS Policy"). (Id. ¶ 9.) NAS is the successor in interest to Underwriters Insurance Company with respect to the NAS Policy. (Id. ¶ 2.) Haseko Construction, Inc. and Foundations are also insureds under the NAS Policy. (Id. ¶ 10.) Haseko has tendered its defense in the Kai I, Charles, and Alvarez Actions to NAS. (Id. ¶ 18.) Additionally, Foundations has tendered its defense in the Steadfast Action to NAS. (Id. ¶ 20.) NAS seeks a declaratory judgment that it has no duty to defend and no duty to indemnify Haseko and Foundations in the Kai I, Charles, Alvarez, and Steadfast Actions.[7] (Id. ¶¶ 27–30.) NAS also requests a declaration that Haseko and Foundations must reimburse NAS for all sums paid or incurred by NAS in connection with its defense of Haseko and Foundations in the Kai I, Charles, Alvarez, and Steadfast Actions. (Id. ¶¶ 31–32.)

On June 4, 2010, Haseko filed a Motion to Dismiss, or in the Alternative, Stay Action in Favor of Pending State Action ("Motion to Dismiss NAS").[8] ("MTD NAS," Doc. # 85.) On June 10, 2010, Foundations filed a

---

[7] NAS's Complaint does not seek a declaratory judgment as to the Kai II Action.

[8] As with the Motion to Dismiss TIG I, Haseko's Motion to Dismiss NAS focuses solely on the third party complaint it filed against TIG, NAS, and Clarendon in the Kai II Action and whether that third party complaint is a parallel

(continued...)

substantive joinder to the Motion to Dismiss NAS.  (Doc. # 83.)  NAS filed an

Opposition to the Motion to Dismiss NAS and the Foundations Joinder to the

Motion to Dismiss NAS on July 19, 2010.  ("MTD NAS Opp'n," Cv. No. 10-

00146, Doc. # 47.)  Haseko filed a Reply on July 29, 2010.  ("MTD NAS Reply,"

Cv. No. 10-00146, Doc. # 48.)  Foundations filed a Reply on the same day.  (Cv.

No. 10-00146, Doc. # 50.)

Meanwhile, on July 19, 2010, Clarendon filed an Opposition to the

Motion to Dismiss NAS.[9]  (Cv. No. 10-00146, Doc. # 46.)  On July 26, 2010,

Haseko filed a Motion to Strike Clarendon's Opposition to the Motion to Dismiss

NAS ("Motion to Strike") ("Mot. to Strike," Doc. # 84) and an Errata to the

Motion to Strike (Cv. No. 10-00146, Doc. # 51).  Clarendon filed an Opposition to

the Motion to Strike on July 28, 2010.  ("Mot. to Strike Opp'n," Cv. No.

10-00146, Doc. # 53.)  Haseko filed a Reply on August 4, 2010.  ("Mot. to Strike

Reply," Cv. No. 10-00146, Doc. # 56.)

_____

[8](...continued)
state proceeding that could justify dismissal or stay of the NAS Action.
Foundations' reply to its substantive joinder to the Motion to Dismiss NAS does,
however, assert that the Coastal Action is a parallel proceeding.

[9] Clarendon filed a Motion for Leave to File a Complaint in Intervention in
the NAS Action on June 16, 2010.  (Doc. # 56.)  That motion had not yet been
granted when Clarendon filed its Opposition to the Motion to Dismiss NAS.

18

Additionally, on June 3, 2010, Haseko filed a Motion to Consolidate the TIG I Action with the NAS Action.  (Doc. # 30; Cv. No. 10-00146, Doc. # 25.) U.S. Magistrate Judge Kevin S.C. Chang issued an order granting the unopposed Motion to Consolidate on August 23, 2010.  (Doc. # 43.)

C.     Federal Court Lawsuit Filed by Clarendon America Insurance Company ("Clarendon Action")

On June 16, 2010, Clarendon filed a Motion for Leave to File a Complaint in Intervention in the NAS Action (Doc. # 56), which Magistrate Judge Chang granted on September 9, 2010 (Doc. # 63).  On September 16, 2010, Clarendon filed a Complaint in Intervention for declaratory relief against Defendants Haseko, Foundations, and Coastal ("Clarendon Complaint"). ("Clarendon Compl.," Doc. # 64.)

Haseko Homes, Inc. is the named insured under a Commercial General Liability Policy issued by Clarendon, Policy Number WT2011296, for the period of November 5, 2001 to November 5, 2003 ("Clarendon Policy").  (Id. ¶¶ 9–10.)  Haseko Construction, Inc. is an additional insured under the Clarendon Policy.  (Id. ¶ 10.)  Coastal and Foundations "contend" that they are also insureds under the Clarendon Policy pursuant to an Owner Controlled Insurance Program put into place by Haseko.  (Id.)  Haseko, Coastal, and Foundations have tendered

their defense in the <u>Kai I</u>, <u>Charles</u>, and <u>Alvarez</u> Actions to Clarendon. (<u>Id.</u> ¶ 22.)

Haseko has tendered its defense in the <u>Kai II</u> Action to Clarendon. (<u>Id.</u> ¶ 27.)

Additionally, Coastal and Foundations have tendered their defense in the <u>Steadfast</u>

Action to Clarendon. (<u>Id.</u> ¶ 24.) Clarendon seeks a declaratory judgment that it

has no duty to defend and no duty to indemnify Haseko, Coastal, and Foundations

in the <u>Kai I</u>, <u>Charles</u>, <u>Alvarez</u>, <u>Kai II</u>, and <u>Steadfast</u> Actions. (<u>Id.</u> ¶¶ 35–38.)

Clarendon also requests a declaration that Haseko, Coastal, and Foundations must

reimburse Clarendon for all sums paid or incurred by Clarendon in connection with

its defense of Haseko, Coastal, and Foundations in the <u>Kai I</u>, <u>Charles</u>, <u>Alvarez</u>, <u>Kai</u>

<u>II</u>, and <u>Steadfast</u> Actions. (<u>Id.</u> ¶¶ 39–40.)

 On October 7, 2010, Haseko filed a Motion to Dismiss, or in the

Alternative, Stay Clarendon Insurance Company's Complaint-in-Intervention in

Favor of Pending State Action ("Motion to Dismiss Clarendon") ("MTD

Clarendon," Doc. # 80), which Coastal joined on November 30, 2010 (Doc. # 103).

On October 13, 2010, Foundations filed a substantive joinder to the Motion to

Dismiss Clarendon. (Doc. # 90.) On December 1, 2010, Clarendon filed an

Opposition to the Motion to Dismiss Clarendon and the Foundations Joinder.

("MTD Clarendon Opp'n," Doc. # 105.) Haseko filed a Reply on December 8,

2010. ("MTD Clarendon Reply," Doc. # 114.) Foundations filed a Reply on December 8, 2010 as well. (Doc. # 110.)

D.  Intervention by Marsh U.S.A., Inc. as a Defendant in the TIG I, NAS, and Clarendon Actions

Although not named as a Defendant in the TIG I, NAS, or Clarendon Actions, on September 21, 2010, Marsh filed a Motion for Leave to Intervene as a defendant in those actions. (Doc. # 68.) Magistrate Judge Chang issued an order granting that unopposed motion on October 25, 2010. (Doc. # 93.) On November 3, 2010, Marsh filed a Consolidated Substantive Joinder to the motions to dismiss pending in those three actions. ("Marsh Joinder," Doc. # 99.) On December 1, 2010, TIG filed an Opposition to Marsh's Consolidated Substantive Joinder.[10] (Doc. # 104.) Marsh filed a Consolidated Reply in Support of its Consolidated Substantive Joinder on December 8, 2010. ("Marsh Joinder Reply," Doc. # 112.)

E.  Federal Court Lawsuit Filed by TIG Insurance Company Against Foundations ("TIG II Action")

On October 5, 2010, TIG filed a Complaint in this Court for declaratory relief against Defendant Foundations ("TIG II Complaint"). ("TIG II Compl.," Cv. No. 10-00575, Doc. # 1.) As set forth above, Haseko Homes, Inc. is

---

[10] Clarendon's Opposition to the Motion to Dismiss Clarendon and the Foundations Joinder is also an Opposition to Marsh's Consolidated Substantive Joinder. (See Doc. # 105.)

the named insured under a Coverage Plus Excess Liability Policy issued by TIG, Policy Number XLB9152516, for the period of November 5, 1997 to November 5, 2001 ("TIG Excess Policy"). (Id. ¶ 13.) The TIG Excess Policy provides "excess commercial general liability coverage to an insured for that portion of the insured's covered ultimate net loss in excess of the applicable limits of underlying insurance." (Id.) Foundations is an insured under the TIG Excess Policy pursuant to an Owner Controlled Insurance Program put into place by Haseko. (See MTD TIG II at 5–6.) In August 2010, Foundations tendered its defense in the Alvarez, Steadfast, and Simpson Actions to TIG. (TIG II Compl. ¶ 14.) TIG contends that its defense obligation can only be triggered by the exhaustion of the underlying policies set forth in the Schedule of Underlying Insurance in the TIG Excess Policy as well as by exhaustion of any other insurance available to an insured. (Id. ¶ 16.) TIG also asserts that it has no duty to indemnify until the limits set forth in the Schedule of Underlying Insurance are exhausted through payment of claims covered by the TIG Excess Policy. (Id. ¶ 17.) TIG seeks a declaratory judgment that it has no duty to defend and no duty to indemnify Foundations in the Alvarez, Steadfast, and Simpson Actions. (Id. ¶¶ 24, 28.)

On November 3, 2010, Foundations filed a Motion to Dismiss Plaintiff TIG Insurance Company's Complaint or, in the Alternative, to Stay the

Instant Action in Favor of Pending State Action ("Motion to Dismiss TIG II").

("MTD TIG II," Doc. # 106.) TIG filed an Opposition to the Motion to Dismiss

TIG II on December 8, 2010. ("MTD TIG II Opp'n," Doc. # 111.) Foundations

filed a Reply on December 14, 2010. ("MTD TIG II Reply," Doc. # 124.) On

November 17, 2010, the parties filed a stipulation to consolidate the <u>TIG II</u> Action

with the <u>TIG I</u>, <u>NAS</u>, and <u>Clarendon</u> Actions. (Doc. # 101.)

On October 12, 2010, the Court issued an Order consolidating the

hearings on the Motions to Dismiss TIG I, NAS, and Clarendon and scheduling

them for argument on January 5, 2011. (Doc. # 87.) Subsequently, Foundations

filed the Motion to Dismiss TIG II, and it was also set for hearing on January 5,

2011.[11] (Doc. # 107.)

## DISCUSSION

For the reasons set forth below, the Court concludes that dismissal of

this consolidated action is not appropriate. The Court nonetheless orders a stay of

these proceedings until the Hawaii state court resolves the pending motions to

dismiss or sever the insurance coverage claims in the <u>Coastal</u> Action.

---

[11] On December 3, 2010, TIG filed a Motion to Continue the hearing to late
February 2011, at which time the Hawaii state court will have already issued a
decision on the motions to dismiss or sever in the <u>Coastal</u> Action. (Doc. # 108.)
On December 20, 2010, the Court denied the Motion to Continue. (Doc. # 128.)

I.    Motion to Strike

As a preliminary matter, the Court will address Haseko's Motion to Strike Clarendon's Opposition to the Motion to Dismiss NAS.  At the time it filed this Opposition, Clarendon's Motion to Intervene in the instant action had not yet been granted.  Haseko therefore moved to strike Clarendon's Opposition on the ground that Clarendon had no standing in the proceedings.  (Mot. to Strike at 2.)  Clarendon, in turn, argued that striking the Opposition would prejudice its rights and requested that the Court treat it as a de facto party.  (Mot. to Strike Opp'n at 6–7.)

On September 9, 2010, Magistrate Judge Chang granted Clarendon's Motion for Leave to File a Complaint in Intervention.  (Doc. # 63.)  Since then, Clarendon has filed a complaint, Haseko has filed a motion to dismiss the Clarendon complaint, and Clarendon has opposed that motion.  (Docs. ## 64, 80, 105.)  Thus Clarendon, as a party, has fully briefed the issues and protected its rights.  Clarendon's Opposition to the Motion to Dismiss NAS is also substantively identical to its Opposition to the Motion to Dismiss Clarendon.  Clarendon would therefore suffer no prejudice if the Court were to strike its initial opposition.  Accordingly, the Court GRANTS Haseko's Motion to Strike (Doc. # 84) and

STRIKES Clarendon's Opposition to the Motion to Dismiss NAS (Cv. No. 10-00146, Doc. # 46).

II.    Motions to Dismiss

Haseko and Foundations contend in the Motions to Dismiss that because the same insurance coverage issues present in the instant action are currently pending in the <u>Coastal</u> Action as a result of Haseko's first amended cross-claim against NAS and first amended third party complaint against Clarendon and Marsh, this Court should dismiss or stay the consolidated action as is within its discretion under the Declaratory Judgments Act, 28 U.S.C. § 2201(a).

A.    Discretion Under the Declaratory Judgments Act

The Declaratory Judgments Act provides, <u>inter alia</u>, that "any court of the United States . . . <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." <u>MedImmune, Inc. v. Genentech</u>, 549 U.S. 118, 136 (2006) (quoting <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995)). Indeed, it is a well-accepted principle that "the decision whether to exercise jurisdiction over a declaratory action lies in the sound discretion of the district court." <u>Huth v. Hartford Ins. Co. of the Midwest</u>, 298 F.3d 800, 803 (9th Cir. 2002).

This determination is discretionary because the Declaratory Judgments Act is "deliberately cast in terms of permissive, rather than mandatory, authority." Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (citing Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250 (1952) (J. Reed, concurring)).  If a party raises the issue in the district court, the court must make a record of its reasoning for why it either accepts or declines jurisdiction.  Id. at 1225.

The Motions to Dismiss the consolidated action are made pursuant to the doctrine recognized by the Supreme Court in Wilton, 515 U.S. at 288, and later expounded upon by the Ninth Circuit in Dizol, 133 F.3d at 1223.  Under that doctrine, federal courts may exercise discretion to hear declaratory judgment actions upon consideration of a number of factors, which are commonly known as the "Brillhart factors."  See Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942).  "The Brillhart factors remain the philosophic touchstone for the district court," and include: (1) avoidance of needless determination of state law issues; (2) discouragement of filing a declaratory judgment action as a means of forum shopping; and (3) avoidance of duplicative litigation.  Dizol, 133 F.3d at 1225.  As the court noted in Dizol, these factors are not exhaustive, and a district court may consider other factors such as: (1) whether the declaratory action will settle all

aspects of the controversy; (2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory action is being sought merely for purposes of procedural fencing or to obtain a "res judicata" advantage; and (4) whether the use of a declaratory action will result in entanglement between the federal and state court systems. Id. at 1225 n.5 (quoting Am. States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994) (J. Garth, concurring)); see also Keown v. Tudor Ins. Co., 621 F. Supp. 2d 1025, 1038–39 (D. Haw. 2008) (applying the factors). Courts might also consider the convenience of the parties as well as the availability and relative convenience of other remedies. Dizol, 133 F.3d at 1225.

B.     Avoidance of Needless Determination of State Law Issues

This factor focuses on "unsettled issues of state law, not fact-finding in the specific case." Allstate Ins. Co. v. Davis, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (quoting Nat'l Chiropractic Mut. Ins. Co. v. Doe, 23 F. Supp. 2d 1109, 1118 (D. Alaska 1998)). The Ninth Circuit has held that a district court needlessly determines state law when: (1) the state law issue in question is the subject of a parallel proceeding; (2) the area of law is expressly left to the states by Congress; and (3) there is no compelling federal interest. See Cont'l Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991), overruled in part on other grounds by

27

Dizol, 133 F.3d at 1227; see also Smith v. Lenches, 263 F.3d 972, 978 (9th Cir. 2001) ("For the federal court to retain jurisdiction to give declaratory judgment on the same claims [pending in a state court action] would result in a needless determination of state law.").  When the sole basis for federal jurisdiction is diversity of citizenship, "the federal interest is at its nadir and the Brillhart policy of avoiding unnecessary declarations of state law is especially strong."  Robsac Indus., 947 F.2d at 1371; see also Keown, 621 F. Supp. 2d at 1038 (same).

      1.     Unsettled Question of State Law

      Haseko, Foundations, and Marsh vehemently argue that the insurance coverage issues presented in this consolidated action involve unsettled questions of Hawaii state law.  (MTD Clarendon at 11–15; MTD TIG II at 19–24; Marsh Joinder at 2–11.)  At issue here is whether tort claims based on alleged building code violations constitute covered "occurrences" under general liability insurance policies.  Haseko and Foundations argue that although the Hawaii Intermediate Court of Appeals held in Group Builders, Inc. v. Admiral Insurance Co., 231 P.3d 67 (Haw. Ct. App. 2010) that there is no coverage under general liability policies for either construction defect claims based in contract or for tort-based claims derivative of those contract claims, this decision must be reconciled with the Hawaii Supreme Court's decision in Association of Apartment Owners of Newton

28

Meadows v. Venture 15, Inc., 167 P.3d 225 (Haw. 2007), which recognized that construction defect claims that also constitute building code violations are tort claims.[12] (MTD Clarendon at 11–15; MTD TIG II at 19–24.) Marsh asserts that the "more fundamental" state law issue presented is whether the holding in Group Builders conflicts with Hawaii Supreme Court precedent, namely Sturla, Inc. v. Fireman's Fund Insurance Co., 684 P.2d 960 (Haw. 1984); Hurtig v. Terminex Wood Treating & Contracting Co., Ltd., 692 P.2d 1153 (Haw. 1984); and Sentinel Insurance Co. v. First Insurance Co. of Hawaii, 875 P.2d 894 (Haw. 1994). (Marsh Joinder at 2–11.) Marsh also contends that the Hawaii Supreme Court's decision in Tri-S Corporation v. Western World Insurance Co., 135 P.3d 82 (Haw. 2006), which held that recklessly caused injuries are not excluded by the "expected or intended" exclusion in general liability policies, injects further ambiguity into Hawaii state insurance law. (Marsh Joinder Reply at 5–6, 11–12 (citing Tri-S Corp., 135 P.3d at 103).) According to Marsh, uncertainty arises because neither the Ninth Circuit's decision in Burlington Insurance Co. v. Oceanic Design & Construction Co., 383 F.3d 940 (9th Cir. 2004) nor the Hawaii Intermediate Court of Appeal's decision in Group Builders incorporate the Hawaii Supreme Court's

---

[12] The Hawaii Supreme Court decided Newtown Meadows in the context of the economic loss rule, and not for insurance coverage purposes.

29

pronouncement in Tri-S.  (Marsh Joinder Reply at 5–6, 11–12.)  In sum, Haseko,

Foundations, and Marsh all assert that these Hawaii state insurance law issues

would be best left to the Hawaii appellate courts for resolution.  (See MTD

Clarendon at 14–15; MTD TIG II at 23; Marsh Joinder at 10–11.)

Although the Court recognizes that, because it is sitting in diversity, it

can only predict Hawaii law, the cases cited by the parties indicate that the

insurance coverage issues present here can be addressed by the federal court.

There is sufficient guidance on how to resolve these issues, and if need be, this

Court has the option of certifying a question to the Hawaii Supreme Court.

Accordingly, the Court is not persuaded that it is incapable of deciding these

insurance coverage questions at this time.

2.      State Law Issue in a Parallel Proceeding

Prior to Dizol, the Ninth Circuit found that a state proceeding was

parallel to a federal declaratory judgment action when: (1) the actions arise from

the same factual circumstances; (2) there are overlapping factual questions raised

in the actions; or (3) the same issues are addressed by both actions.  See Golden

Eagle Ins. Co. v. Travelers Cos., 103 F.3d 750, 754–55 (9th Cir. 1996), overruled

in part on other grounds by Dizol, 133 F.3d at 1227; Emp'rs Reinsurance Corp. v.

Karussos, 65 F.3d 796, 800 (9th Cir. 1995) (finding that the state and federal

actions were parallel when the actions raised overlapping, but not identical, factual issues), overruled in part on other grounds by Dizol, 133 F.3d at 1227.

"The Ninth Circuit construes 'parallel actions' liberally. Underlying state actions need not involve the same parties nor the same issues to be considered parallel." Keown, 621 F. Supp. 2d at 1037. Indeed, "'[i]t is enough that the state proceedings arise from the same factual circumstances.'" Id. (quoting Golden Eagle, 103 F.3d at 754–55). Therefore, in Karussos, the Ninth Circuit determined that a district court abused its discretion in retaining jurisdiction over an insurance coverage action, even though the state and federal cases raised overlapping, but not identical, factual issues and the insurer was not a party to the state court action. Karussos, 65 F.3d at 798, 800.

The Ninth Circuit reached a similar result in Polido v. State Farm Mutual Automobile Insurance. Co., 110 F.3d 1418 (9th Cir. 1997), overruled in part on other grounds by Dizol, 133 F.3d at 1227.[13] There, State Farm argued that a declaratory judgment action was not parallel to a state tort proceeding because State Farm was not a party to the state proceeding and because the declaratory

---

[13] In Polido, the Ninth Circuit vacated and remanded a district court's decision on the merits, directing the district court to consider whether there were any circumstances warranting the exercise of its jurisdiction in the first place. Polido, 110 F.3d at 1424.

judgment action sounded in contract.  Id. at 1423.  The Ninth Circuit disagreed

noting that it had

> previously held that differences in factual and legal issues between the
> state and federal court proceedings are not dispositive because the
> insurer "could have presented the issues that it brought to federal
> court in a separate action to the same court that will decide the
> underlying tort action."

Id. at 1423 (quoting Karussos, 65 F.3d at 800).

Importantly, a state proceeding need not be underway at the time an

insurer files a declaratory judgment action to be considered parallel.  In Wilton, the

insurers filed a declaratory judgment action in a federal district court one month

before the insureds filed suit in state court.  Wilton, 515 U.S. at 280.  The Supreme

Court nonetheless affirmed the district court's stay of the declaratory judgment

action, concluding that the district court "acted within its bounds in staying this

action for declaratory relief where parallel proceedings . . . were underway in state

court."  Id. at 290.  As a result the Ninth Circuit has stated that "[t]he Court's

holding in Wilton makes clear that a district court may consider the circumstances

as they exist at the time it rules on a request for a declaration."  Polido, 110 F.3d at

1422; see also Am. Cas. Co. of Reading, Pa. v. Krieger, 181 F.3d 1113, 1119 (9th

Cir. 1999) (noting that a district court is "entitled to evaluate the motion to dismiss

under the circumstances existing at the time the issue was raised, rather than at the

time of filing"). That a state proceeding is not underway at the time an insurer files a declaratory judgment action is therefore immaterial in determining whether the state action is parallel.

Finally, "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." Dizol, 133 F.3d at 1225. However, "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."[14] Id. (emphasis added).

In the instant case, the Coastal Action arguably is a parallel state court proceeding. Although it began as a suit for breach of contract and failure to procure insurance premised on the third party complaint filed in the Steadfast Action, the Coastal Action now encompasses many of the issues presented to this Court in the consolidated action. By virtue of the first amended cross-claim and the first amended third party complaint, Haseko broadened the scope of the Coastal Action such that it now includes insurance coverage claims against NAS and Clarendon related to the Charles, Alvarez, and Kai II Actions. These insurance

---

[14] The parties raise various arguments regarding this presumption. Because the Court determines that the Brillhart factors weigh in favor of granting a stay, even without a presumption, the Court declines to reach the issue.

coverage claims are precisely the issues that TIG, NAS, and Clarendon are asking the Court to decide here. Furthermore, each party present in the consolidated action, excluding TIG and Foundations, is involved in the <u>Coastal</u> Action in some capacity. Even then, Foundations has indicated that it "will not object to its joinder to the <u>Coastal</u> Action if the instant action is either dismissed or stayed." (MTD TIG II Reply at 8.) TIG emphasizes Coastal's failed attempt to join TIG as a party in the <u>Coastal</u> Action as well as the fact that TIG is not a party to that action, but Ninth Circuit precedent is clear that TIG need not be present in the <u>Coastal</u> Action for it to be considered a parallel state proceeding. <u>See</u> <u>Karussos</u>, 65 F.3d at 798, 800. Furthermore, at this time, it appears that a mechanism may exist for TIG to become a party in the <u>Coastal</u> Action if TIG finds necessary to do so.

  The Court is also not persuaded by TIG's argument that because the TIG Excess Policy is not a true "follow form" policy, even if this Court dismisses or stays the <u>NAS</u> and <u>Clarendon</u> Actions, the Court should nonetheless retain jurisdiction over the <u>TIG I</u> and <u>TIG II</u> Actions. (<u>See</u> TIG Supp. Mem. at 12–18.) Even if the <u>Coastal</u> Action cannot have any preclusive effect on TIG, as TIG asserts, that is not the current inquiry. Rather, for a parallel proceeding to exist, the actions must arise from the same factual circumstances, there must be overlapping factual questions raised in the actions, or the same issues must be addressed by

34

both actions.  See Golden Eagle, 103 F.3d at 755.  It is readily apparent that at the very least, the Coastal Action and the instant consolidated action arise from the same factual circumstances, namely the allegedly defective construction work that occurred at the Ocean Pointe development.  If the motions to dismiss or sever are denied, and the insurance coverage claims in the Coastal Action proceed, this Court and the Hawaii state court would be called upon to decide overlapping issues of Hawaii insurance law.  This is sufficient for the Coastal Action to be considered a parallel proceeding.

TIG also points out that the first amended cross-claim as well as the first amended third party complaint in the Coastal Action were not filed until August 24, 2010, well after the TIG I and NAS Actions had been commenced and after Clarendon had filed a motion for leave to intervene in the consolidated action. (See TIG Supp. Mem. at 19.)  Indeed, this occurred a mere six days before the Court's initial hearing on the Motion to Dismiss TIG I.[15]  (See id.)  Although timing may be important for determining whether a presumption exists, the Ninth Circuit has been clear that it is immaterial whether the federal declaratory

---

[15] Haseko asserts that it could not file its first amended cross-claim and its first amended third party complaint any sooner because NAS removed the Coastal Action to this Court on April 8, 2010 and it was not remanded until August 4, 2010.

judgment action was filed before the parallel state action.  See Polido, 110 F.3d at 1422.

Accordingly, at this time, the Court concludes that there is a parallel state proceeding that weighs in favor of staying the consolidated action until the Hawaii state court resolves the motions to dismiss or sever in the Coastal Action.[16]

### 3. Area of Law Left to the States and Federal Interest

Finally, there is no compelling federal interest here.  This action involves insurance law, which is an area that Congress has expressly left to the states.  See 15 U.S.C. §§ 1011–12; see also Robsac Indus., 947 F.2d at 1371; Dizol, 133 F.3d at 1232 (noting that because insurance industry is "wholly state regulated . . . the federal interest is minimal").  Further weighing in favor of dismissal or stay, is the fact that this is a diversity case.  As noted, where "the sole basis of jurisdiction is diversity . . . the federal interest is at its nadir."  Keown, 621 F. Supp. 2d at 1038 (citing Robsac, 947 F.2d at 1371).  Indeed, TIG, NAS, and Clarendon seemingly concede this point because their briefing makes no argument with respect to this subfactor.

---

[16] Because it concludes that the Coastal Action is a parallel state proceeding, the Court does not consider whether any of the other state court actions would also constitute parallel proceedings.

In sum, although the Court recognizes that all of the parties involved in the insurance coverage dispute are presently joined in this consolidated action, the Court is nonetheless concerned that if it proceeds to the merits of the insurance coverage issue, it could make an unnecessary determination of state law. In light of the parallel state court proceeding as well as the lack of a federal interest, the Court finds that the consolidated action would involve needless determination of state law issues if the Hawaii state court does not dismiss or sever Haseko's first amended cross-claim and first amended third party complaint in the <u>Coastal</u> Action.

C.      <u>Discouraging Forum Shopping</u>

Federal courts have a duty to discourage forum shopping and should "generally decline to entertain reactive declaratory actions." <u>Dizol</u>, 133 F.3d at 1225; <u>see also</u> <u>Robsac</u>, 947 F.2d 1367, 1371 ("[I]f a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction."). Such forum shopping occurs when an insurer files a declaratory action in federal court "to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." <u>Krieger</u>, 181 F.3d at 1119. Typical "reactive declaratory judgment actions" involve a party suing in federal

court to determine its liability after the commencement of a state court action.

Dizol, 133 F.3d at 1225.  This is not, however, the only indicator:

> Reactive litigation can [also] occur in response to a claim an insurance
> carrier believes to be not subject to coverage even though the claimant
> has not yet filed his state court action: the insurer may anticipate that
> its insured intends to file a non-removable state court action, and rush
> to file a federal action before the insured does so.

Robsac, 947 F.2d at 1372.  In Robsac, therefore, the Ninth Circuit found that this

factor weighed against an insurer who had filed for declaratory relief in federal

court before the insured could file a state court action.  Id.  The court reached this

conclusion because "the reason [the insurer] formed [the] intention [to file suit

first] was that it was aware of Robsac's claim and hoped to preempt any state court

proceeding."  Id.

> To avoid forum shopping, district courts should consider "the

availability of state court proceedings to resolve all issues without federal

intervention."  Chamberlain, 931 F.2d at 1367; see also Budget Rent-A-Car v.

Crawford, 108 F.3d 1075, 1081 (9th Cir. 1997) overruled in part on other grounds

by Dizol, 133 F.3d at 1227 ("[T]o avoid forum shopping and vindicate federalism

concerns, a district court must consider whether existing state court remedies such

as indemnification or the right to seek a declaration under state law will provide an

adequate remedy for a party who files a claim under the Declaratory Judgment Act.").

 1. <u>TIG and NAS</u>

Haseko contends that both TIG and NAS engaged in impermissible forum shopping because they were both involved in a California state insurance coverage litigation, filed by Haseko, at the time they filed the TIG I and NAS Complaints. TIG and NAS counter that Haseko is the party who has engaged in forum shopping.

On July 1, 2009, Haseko filed an action in San Diego County Superior Court seeking a determination of the rights and obligations of its insurers as to the <u>Kai I</u> Action (the "<u>California I</u> Action"). (MTD TIG I Opp'n, Declaration of Andrew R. McCloskey ("McCloskey Decl.") ¶ 4.) NAS removed the <u>California I</u> Action to the United States District Court for the Southern District of California on July 24, 2009. (<u>Id.</u> ¶ 5.)

On August 26, 2009, Haseko filed a second action in San Diego County Superior Court seeking a determination of the rights and obligations of its insurers as to both the <u>Kai I</u> and <u>Charles</u> Actions (the "<u>California II</u> Action"). (<u>Id.</u> ¶ 7.) On September 2, 2009, NAS removed this action to the United States District Court for the Southern District of California as well. (<u>Id.</u> ¶ 8.) On January 22,

2010, the United States District Court for the Southern District of California granted Haseko's motion to dismiss the California I Action and remanded the California II Action to San Diego County Superior Court for lack of diversity jurisdiction.  (Id. ¶ 13.)

On February 26, 2010, TIG filed a motion to dismiss the California II Action on the grounds of forum non conveniens.  (Id. ¶ 14.)  TIG filed the TIG I Complaint in this Court on the same day.  (Id.)  On March 15, 2010, NAS Filed the NAS Complaint in this Court.  (Id. ¶ 16.)  On April 26, 2010, the San Diego County Superior Court granted TIG's motion to dismiss the California II Action on the grounds of forum non conveniens.  (Id. ¶ 17.)

On May 6, 2010, Haseko filed its third party complaint in the Kai II Action against TIG, NAS, and Clarendon, seeking a determination of all three insurers' rights and obligations as to the Charles, Alvarez, and Kai II Actions.  This third party complaint was dismissed on August 11, 2010.  On August 24, 2010, Haseko filed a first amended cross-claim against NAS and a first amended third party complaint against Clarendon in the Coastal Action, asserting insurance coverage claims as to the Charles, Alvarez, and Kai II Actions.

The Court is not persuaded that this Brillhart factor weighs in favor of TIG, NAS, or Haseko.  Although TIG and NAS filed the TIG I and NAS

40

Complaints in this Court while the <u>California I</u> and <u>California II</u> Actions were still pending, Haseko has now itself filed two lawsuits on the coverage issues and it has also attempted to join the coverage issues in two other lawsuits.  Further, there is no evidence that TIG, NAS, or Haseko attempted to gain an advantage or benefit by their choice of forum.  On these facts, and without more, the Court finds that this <u>Brillhart</u> factor is neutral as to TIG, NAS, and Haseko.

    2.    <u>Clarendon</u>

Haseko asserts that Clarendon has filed a reactive lawsuit in this Court by intervening in this action after Haseko had already filed its third party complaint against Clarendon in the <u>Coastal</u> Action.  (MTD Clarendon at 16.)  Clarendon, in turn, asserts that Haseko has engaged in forum shopping by filing the two California state lawsuits as well as twice attempting to join the insurance coverage issues in Hawaii state lawsuits.  (MTD Clarendon Opp'n at 20–23.)

Although Clarendon filed its motion to intervene in this action after Haseko had already filed its third party complaint against Clarendon in the <u>Coastal</u> Action, Clarendon's motion to intervene nonetheless preceded Haseko's first amended third party complaint in the <u>Coastal</u> Action, wherein Haseko broadened the scope of the insurance coverage issues presented.  Haseko presents no facts or evidence to show that Clarendon attempted to benefit from filing its complaint in

this Court. Similarly, Clarendon presents no new facts to show that Haseko engaged in impermissible forum shopping. Therefore, the Court finds that this <u>Brillhart</u> factor is neutral as to Clarendon and Haseko.

      D.     <u>Avoidance of Duplicative Litigation</u>

      "The third Brillhart factor is the policy of avoidance of duplicative litigation." <u>Robsac</u>, 947 F.2d at 1373. The underlying principle behind this factor is to conserve judicial resources. <u>See</u> <u>id.</u>; <u>Brillhart</u>, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."). Thus when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." <u>Wilton</u>, 515 U.S. at 283; <u>see also</u> <u>Robsac</u>, 947 F.2d at 1373 (finding that where a "federal declaratory suit is virtually the mirror image of a state suit" the litigation is duplicative); <u>Krieger</u>, 181 F.3d at 1119 (determining that litigation not duplicative when "the state court

litigation concluded without deciding the coverage issue before the district court in the declaratory relief action").

Given the current procedural posture in state court, this factor weighs in favor of maintaining jurisdiction over the proceedings, but staying them as well. As mentioned above, Haseko has filed a first amended cross-claim against NAS and a first amended third party complaint against Clarendon and Marsh in the <u>Coastal</u> Action, which raise many of the same issues and involve many of the same parties as are present in the instant action. Foundations and TIG are the two parties present here but not involved in the <u>Coastal</u> Action, and Foundations has already indicated that it would be willing to participate in the <u>Coastal</u> Action if the instant suit were dismissed or stayed (<u>see</u> MTD TIG II Reply at 8). Further, nothing on the record indicates that TIG could not join the <u>Coastal</u> Action if it deems necessary. In light of the policy of conserving judicial resources that underlies this <u>Brillhart</u> factor, it may be preferable to dismiss this action rather than permit both this suit and the <u>Coastal</u> Action to go forward piecemeal.

The Court is mindful, however, that Haseko's first amended cross-claim and first amended third party complaint in the <u>Coastal</u> Action could soon be dismissed or severed from the rest of the suit. Clarendon represents that if severance does occur, the insurance coverage claims will be removed to this Court.

Under these circumstances, this <u>Brillhart</u> factor swings in favor maintaining jurisdiction over the proceedings. Every party involved in the insurance coverage dispute is presently joined in this consolidated action and the Court is familiar with the parties and the underlying issues. Requiring the parties to recommence this lawsuit and reargue the issues the Court has already heard would be a waste of judicial resources, particularly because the motions to dismiss or sever in the <u>Coastal</u> Action should be decided in a relatively short period of time. Thus, the most economically prudent solution that this factor counsels would be to maintain jurisdiction over the proceedings but to stay them until the Hawaii state court has had the opportunity to resolve the motions to dismiss or sever in the <u>Coastal</u> Action. Accordingly, the Court finds that this <u>Brillhart</u> factor weighs in favor issuing a stay of the consolidated action, but not dismissing it.

 E. <u>Additional Factors</u>

   As discussed above, the Ninth Circuit has also permitted courts to consider other factors when analyzing whether to decline jurisdiction under the Declaratory Judgments Act. These other factors include: (1) whether the declaratory action will settle all aspects of the controversy; (2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory action is being sought merely for purposes of

44

procedural fencing or to obtain a "res judicata" advantage; and (4) whether the use of a declaratory action will result in entanglement between the federal and state court systems.  <u>Dizol</u>, 133 F.3d at 1225 n.5.

Here, as above, these additional factors generally weigh in favor of the Court retaining jurisdiction but staying the proceedings.  Although the instant declaratory judgment action will not settle the issue of Haseko's liability in the <u>Charles</u>, <u>Alvarez</u>, and <u>Kai II</u> Actions, it could serve a useful purpose in clarifying the legal obligations that TIG, NAS, and Clarendon may owe to Haseko, Coastal, Foundations, and Marsh.  However, in light of the ongoing proceedings in the <u>Coastal</u> Action, any clarity a judgment by this Court might render is outweighed by the burden placed on the parties by requiring them to simultaneously litigate the same issues here and in state court.  If both this Court and the Hawaii state court were to reach the merits of the insurance coverage issues, there would be a genuine risk of inconsistent judgments, piecemeal litigation, and ultimately entanglement between the federal and state court systems.

Despite this, there remains the possibility that Haseko's first amended cross-claim and first amended third party complaint will be severed or dismissed from the <u>Coastal</u> Action, in which case the proceedings could take place here.  In that scenario, maintaining the instant action would be extremely beneficial—all of

the interested parties are already joined in this proceeding, the Court is familiar with the issues, and the parties would not have to go through the trouble of recommencing the proceedings. Further, the Court would be able to render judgment on an issue that would no longer be the subject of a parallel state proceeding, namely the potential liabilities of the three insurance companies. Accordingly, the Court finds that the additional factors generally support retaining jurisdiction over this matter but staying the proceedings until the state court resolves the motions to dismiss or sever.

In sum, the Court finds that, on balance, the Brillhart and Dizol factors weigh in favor of retaining jurisdiction over the instant declaratory judgment action, but issuing a stay while the Hawaii state court resolves the motions to dismiss or sever in the Coastal Action. The Court further finds that TIG, NAS, and Clarendon will suffer little prejudice because of the stay, even if it causes a short delay in the instant case. A stay will give the state court an opportunity to resolve the motions to dismiss or sever presently before it while protecting the parties from having to litigate the same issues simultaneously in both state and federal court. Accordingly, the Court GRANTS IN PART AND DENIES IN PART the Motions to Dismiss.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS the Motion to Strike (Doc. # 84), GRANTS IN PART AND DENIES IN PART the Motions to Dismiss (Docs. ## 32, 85, 80, 106), and GRANTS the Motions for Joinder (Docs. ## 83, 90, 99, 103). The Court hereby orders a stay of proceedings pending resolution of NAS and Clarendon's motions to dismiss or sever in the <u>Coastal</u> Action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 26, 2011.

_____
David Alan Ezra
United States District Judge

<u>TIG Insurance Co. et al. v. Haseko Homes, Inc. et al.</u>, Cv. No. 10-00107 DAE-KSC; ORDER: (1) GRANTING MOTION TO STRIKE; (2) GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; (3) GRANTING MOTIONS FOR JOINDER